**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**KENNETH W. ADAMS, ET AL**                                                                                    **PLAINTIFFS**

**V.**                                                               **CIVIL ACTION NO.: 3:67-CV-04156-TSL-FKB**

**RANKIN COUNTY BOARD OF EDUCATION, ET AL**                                         **DEFENDANTS**

**ORDER GRANTING UNOPPOSED MOTION
FOR DECLARATION OF PARTIAL UNITARY STATUS**

Before this Court is the *Unopposed Motion for Declaration of Partial Unitary Status* [Doc. 88] filed by the Rankin County School District (hereinafter "RCSD") on October 28, 2019. Based on a review of the information and data provided by RCSD, RCSD seeks a declaration of unitary status and withdrawal of court supervision in the areas of transportation and facilities. The Parties have agreed that withdrawal of court supervision in these areas is warranted by the steps taken by RCSD throughout the pendency of this action. The Parties further agree that RCSD has fulfilled its affirmative desegregation obligations under the Fourteenth Amendment and applicable federal law, in the areas of transportation and facilities, entitling it to a declaration of partial unitary status.

The agreements listed above were represented in the *Unopposed Motion*, as counsel for RCSD conferred with counsel for the Private Plaintiffs and the United States of America as Amicus. Counsel for both of those parties confirmed that they have no objection or opposition to the relief requested in the *Unopposed Motion*. The Parties agree that entry of this *Order*, without further litigation, is in the public interest.

The Parties further agree that the Court should continue to exercise its jurisdiction over the areas of extracurricular activities, faculty, staff, and student assignment, and quality of

education as the Parties work towards an agreement that will support finding that RCSD has fulfilled its affirmative desegregation obligations with respect to those remaining areas.

## I. PROCEDURAL HISTORY

On August 1, 1967, Plaintiffs initiated this action against RCSD by filing their *Complaint* alleging the unlawful operation of a racially dual system of public education in violation of the Fourteenth Amendment to the United States Constitution. *See* Doc. 83-1.

On September 26, 1967, this Court ordered RCSD to take affirmative steps to end all school segregation and to eliminate the effects of the dual school system. On April 6, 1970, this Court entered its *Opinion and Order Providing for Unitary School System* (hereinafter "the 1970 *Order*") in RCSD which, among other things, created five school zones and sub-zones within RCSD. *See* Doc. 83-2. Further, the 1970 *Order* approved a unitary school plan to facilitate desegregation in the following areas: (1) student assignment, (2) faculty and staff, (3) majority to minority transfers, (4) transportation, (5) school construction and site selection, and (6) attendance outside system of residence. *Id*.

On September 27, 1973, the United States Court of Appeals for the Fifth Circuit held that RCSD failed to establish a fully unitary system, directing it to take steps to meet its obligations under the law. On November 29, 1973, this Court entered a *Consent Order* ( hereinafter "the 1973 *Order*") which required, among other things, modifications to the attendance zones, prior court approval for any new construction, the desegregation of all classes, reinstatement of a full schedule of extra-curricular and social activities and events for all students, the elimination of overlapping bus routes with assignments based on race, the assignment of bus drivers to routes without regard to race of the students, and semiannual reporting to the Court, with respect to student assignment, faculty and staff assignment, transfers, transportation, construction and

facilities, and resource allocation. *See* Doc. 83-3.

In July of 1976, the Pearl Public School District (hereinafter "PPSD"), was established as a separate municipal school district. On August 21, 1978, this Court issued an additional *Consent Order* ( hereinafter "the 1978 *Order*") that, among other things, (i) modified the attendance zones, (ii) provided for the construction of a new school to alleviate some of the overcrowding in the Pearl and Brandon Attendance Zones, (iii) required that the percentage of black students in any school shall not exceed 45% or fall below 12%, (iv) required all new construction to be approved by Plaintiffs, (v) assured that all schools shall be operated without racial discrimination, (vi) required Defendants to take affirmative steps to ensure proportionate black participation at all student and faculty activities, (vii) ensured representation in all professional, administrative and non-professional employment areas, (viii) required RCSD to achieve a ratio of at least 28% black staff at every grade level and in all employment categories, and (ix) established reporting requirements. *See* Doc. 83-4.

Pursuant to its terms, the 1978 *Order* was "supplemental" to the 1970 *Order* and 1973 *Order* and "all matters not inconsistent with those orders remain[ed] on full force and effect." Doc. 83-4 at 5, ¶8. In addition, this Court made clear that the 1978 *Order* "applies to the Rankin County Public Schools as they existed prior to the incorporation of the City of Pearl and the formation of the Pearl Municipal Separate School District, and it, therefore, applies with equal force to administrators, faculty and students of what is now known as the Pearl Municipal Separate School District." Doc. 83-4 at 5.

On March 23, 1995, the PPSD filed a motion to intervene as a defendant arguing that (i) the boundaries of the Pearl Attendance Zone had become objectionable, and (ii) it was required to educate children that resided outside of the PPSD. This Court granted PPSD's motion to

3

intervene on December 7, 1995. On May 1, 1997, the parties reached and filed with the court a settlement agreement regarding the RCSD and PPSD attendance zones (hereinafter "the 1997 *Order*").

On June 1, 2010, RCSD filed a *Motion to Modify Consent Decree* (hereinafter "*Motion to Modify*") in accord with a resolution that the Boards of the RCSD and PPSD both approved. *See* Doc. 2. The resolution (hereinafter "the Resolution") allowed parents and students residing in specific areas to attend either school district.[1] A copy of the Resolution was attached to the *Motion to Modify*. *See* Doc. 2-1.

On November 1, 2011, the PPSD filed a *Motion for Enlargement of Pearl Attendance Zone and, thereupon, Declaration of Unitary Status* (hereinafter "*Motion for Enlargement*"). *See* Doc. 20. On January 10, 2012, the Court (i) ruled that the unitary status portion of the *Motion for Enlargement* should be bifurcated and heard at a later date, and (ii) entered an *Agreed Order* approving the Resolution. *See* Doc. 40. Thereafter, on November 1, 2012, this Court approved a *Consent Order for Enlargement of Pearl Attendance Zone* (hereinafter "2012 *Consent Order*"), which approved enlarging the PPSD attendance zone so that it would be coterminous with the present corporate limits of the City of Pearl. *See* Doc. 82.

Generally, the orders outlined above were entered to require that RCSD take all necessary steps to assure that the racial composition of its students, faculty, and staff in its schools would not indicate or suggest that a particular school was intended for Black students or White students.

---

[1] The Resolution provided, in pertinent part, that from July 30, 2008 until May 31, 2010, students in any of the El Dorado area, the Patrick Farms area, the Greenfield Village area, and the Highlands area were allowed to attend their choice of either a school in the RCSD or the PPSD, provided that the student obtained a release from the school district that the student was zoned to attend based upon location of residence, and that the RCSD and the PPSD continue to pay tuition reimbursement.

4

Since the inception of this action, RCSD has been under court supervision in order to eliminate the vestiges of past racial segregation policies that have negatively impacted the educational achievement in Rankin County and throughout the State of Mississippi. Pursuant to this Court's supervision, through the tireless work of its administration, and through cooperative efforts with the Private Plaintiffs and Amicus, RCSD has made strides in achieving a unitary system devoid of past segregation.

Included in its many efforts, RCSD coordinated and held a successful bond issue election on March 7, 2017. *See* Docs. 83-5, 83-6, and 83-7. Construction pursuant to the successful bond issue was approved by this Court on June 26, 2017. *See* Doc. 86. Since that date, RCSD proceeded with its construction efforts, including the following:

a. Construction of over 75 new classrooms;

b. Construction of a new high school facility in the Northwest Attendance Zone;

c. Renovations to existing facilities, including security upgrades, painting, drainage improvements, new toilets, electrical upgrades, and other necessary upgrades; and

d. The addition of fine arts facilities, physical education facilities, and multi-purpose facilities for those RCSD schools currently lacking the same.

*See* Doc. 83-6. A substantial amount of work has occurred and continues to occur subsequent to the bond issue. *See* Doc. No. 89-1.

These construction and renovation projects are evenly spread across RCSD's schools and attendance zones. They are aimed at eliminating the overcrowding effects experienced by RCSD's recent and exponential student population growth and to repair RCSD's existing facilities that need upgrades to better serve RCSD's student population.

The United States and Private Plaintiffs have actively monitored RCSD's compliance

with prior *Orders* and issued several formal and informal requests for information between October 2009 and March 2019 to which RCSD responded. The United States conducted a site visit of RCSD's schools from May 2-6, 2016. The United States and Private Plaintiffs also conducted a site visit of the RCSD's schools from May 7-10, 2018.

Based upon the analysis of the information provided by RCSD, and consultation among all the Parties, the Parties agree that RCSD has fulfilled its affirmative desegregation obligations under the Fourteenth Amendment and applicable federal law with respect to transportation and facilities. As such, the Parties respectfully request that this Court declare (1) that RCSD has attained partial unitary status in the areas of transportation and facilities, (2) that the claims relative to these aforementioned areas are dismissed, and (3) that it will maintain jurisdiction over the areas of extracurricular activities, faculty assignment, staff assignment, student assignment, and quality of education.

## II.     OVERVIEW OF RANKIN COUNTY SCHOOL DISTRICT

RCSD operates within Rankin County, Mississippi. Based on the 2010 U.S. Census, Rankin County had an approximate total population of 141,617, of which 109,523 or 77.3% were White and 26,634 or 18.8% were Black.[2] The most recent 5-year population estimates for Rankin County posted with the U.S. Census Bureau showed an estimated total population of 152,080, of which 76.5% was estimated to be White and 20.6% was estimated to be Black.[3]

RCSD operates a total of twenty-eight (28) schools in eight (8) attendance zones, including nineteen (19) elementary and middle schools, eight (8) high schools, and a single alternative school. During the 2018-2019 school year, RCSD enrolled a total of 19,122 students that had an overall racial makeup of 69.13% White and 23.80% Black. *See* Doc. No. 89-2.

---

[2] https://www.census.gov/popfinder/?fl=28121.
[3] https://www.census.gov/quickfacts/fact/table/rankincountymississippi,US/POP010210#POP010210.

**III.     LEGAL STANDARDS**

In *Green v. Cnty. Sch. Bd.*, the United States Supreme Court held that school boards "operating state-compelled dual systems were nevertheless clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." 391 U.S. 430, 437-38 (1968).

A school district seeking a declaration of unitary status and termination of judicial supervision must show that its schools have: (1) fully and satisfactorily complied with the court's decrees for a reasonable period of time; (2) eliminated the vestiges of prior *de jure* discrimination to the extent practicable; and (3) demonstrated a good-faith commitment to the whole of the Court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 87-89 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491-92, 498 (1992); *Bd. of Educ. of Oklahoma City Pub. Sch. v. Dowell*, 498 U.S. 237, 248-50 (1991). In determining unitary status, the ultimate inquiry for the court is "whether the constitutional violator has complied in good faith with the desegregation decree since it was entered and whether vestiges of past discrimination have been eliminated to the extent practicable." *Freeman*, 503 U.S. at 492 (citing *Dowell*, 498 U.S. at 250; *see also United States v. Fletcher*, 882 F.3d 151, 156 (5th Cir. 2018).

The goal of a school system operating pursuant to a desegregation order is to convert promptly from a *de jure* segregated school system to a system without "white" schools or "black" schools, but just schools. *Green v. Cnty. Sch. Bd. of New Kent Cnty.,* 391 U.S. 430, 442 (1968).  The following "*Green* factors" must be addressed as part of the determination of whether a school district has fulfilled its duties and eliminated vestiges of the prior dual system to the extent practicable: (1) student assignment; (2) faculty assignment; (3) staff assignment; (4) transportation; (5) extracurricular activities; and (6) facilities. *See Dowell*, 498 U.S. at 250

7

(discussing *Green*, 391 U.S. at 435). The Supreme Court also has approved consideration of other indicia, such as "quality of education," as important factors for determining whether the school district has fulfilled its desegregation obligations. *Freeman*, 503 U.S. at 492-93.

A court may allow partial or incremental dismissal of a school desegregation case before full compliance has been achieved in every area of school operations, thereby retaining authority to exercise jurisdiction over those areas not yet in full compliance and terminating its exercise of jurisdiction over those areas in which compliance was found. *See Freeman* at 490-91.

Based on the information and data provided by RCSD, and on all the surrounding facts reviewed by the Parties, RCSD has complied with the Court's desegregation orders for a reasonable period of time and has eliminated the vestiges of past *de jure* discrimination to the extent practicable in the areas of transportation and facilities, which are "among the most important indicia of a segregated system." *Dowell*, 498 U.S. at 250 (citations omitted).

## III. ANALYSIS

### A. Facilities

#### 1. Legal Authority

Pursuant to the Supreme Court's holding in *Green*, RCSD is required to demonstrate that it is planning, funding, and building facilities in a manner that provide a desegregated educational and learning environment for all students. *Green*, 391 U.S. at 435-442. Further, RCSD is required to take corrective action to ensure that it maintains schools with "like" facilities, such that any differences in individual facilities are the product of factors unrelated to race. *Swann*, 402 U.S. at 18-19. Physical facilities should be deemed unitary when the school district has ensured, to the extent practicable, that its facilities are not amenable to racial identification simply on the basis of their physical condition. *Id*. at 18.

2. **Prior Orders**

The 1970 *Order* requires that "[a]ll school construction, school consolidation, and site selection (including the location of any temporary classrooms) in the system shall be done in a manner which will prevent the recurrence of the dual school structure once this desegregation plan is implemented." Doc. 83-2 at p. 14. Further, the 1973 *Order* states that RCSD shall not "construct any new facilities or significantly enlarge any existing facilities without the prior approval of this Court; and any proposed new construction shall contemplate the full utilization of all existing vacant classroom and building facilities located throughout the school district." Doc. 83-3 at p. 3.

3. **The District has complied with all Orders and eliminated the vestiges of discrimination with respect to facilities**

RCSD operates twenty-eight (28) schools, using attendance zones based on residence, to determine each students' assigned school. The United States conducted site visits of eleven (11) schools,[4] the RCSD alternative school known as the Learning Center, and the Rankin County Juvenile Detention Center on May 2-6, 2016. In addition, the United States and Private Plaintiffs conducted site visits of sixteen (16) schools[5] and the Learning Center on May 7-10, 2018. The school buildings were modern and spacious and there were no facilities-related complaints on record. RCSD school facilities range in dates of construction, but all have been repaired and renovated as needed over the past seven decades. *See* Doc. 89-5. All RCSD schools have sufficient classroom facilities to comfortably accommodate their student bodies. Those buildings

---

[4] These schools included the following: Northwest Elementary, Northwest Middle, McLaurin Elementary, McLaurin High, Puckett Elementary, Puckett High, Pelahatchie Elementary, Brandon High, Steen's Creek Elementary, Florence Elementary, and Florence High.

[5] These schools included the following: Flowood Elementary, Northwest Rankin High, McLaurin Elementary, McLaurin High, Puckett Elementary, Puckett High, Pisgah Elementary, Pisgah High, Pelahatchie Elementary, Pelahatchie High, Brandon High, Brandon Middle, Richland Upper Elementary, Richland High, Florence Elementary, and Florence Middle.

9

are in good to excellent condition with no evidence of disrepair. Currently needed building repairs and upgrades are being addressed by RCSD through use of its bond issue funds, addressed in further detail below and in those associated exhibits providing information on the bond issue construction progress being made by RCSD. During the site visits, the United States and Private Plaintiffs met with RCSD representatives who reported that RCSD does not intend to modify its current facility pattern.

On March 7, 2017, RCSD coordinated and held a successful bond issue election. The bond will ensure the necessary upgrades and construction needed by each of its school facilities. Much of this bond issue construction is already underway, with some projects at or near completion. *See* Doc. 89-1. These efforts include facility upgrades, security upgrades, creation of new schools, and the addition of new facilities to existing schools. *See* Doc. 83-6 and Doc. 89-1. The construction and renovation efforts undertaken by RCSD are made pursuant to its goals of providing suitable resources for its students. Further, the new construction and renovation of existing facilities are race neutral projects that will provide benefits for all RCSD students. The projected date for completion of all projects is August 2021.

RCSD's schools are located in the locations previously approved by this Court. The school facilities differ in construction age and design, but every effort has been made by RCSD to ensure that these facilities are all equally well maintained and that they all provide more than adequate space for educational and related uses. The Parties agree that RCSD has complied with its obligations in the area of facilities.

### B. Transportation

#### 1. Legal Authority

"Bus transportation has been an integral part of the public education system for years,

and was perhaps the single most important factor in the transition from the one-room schoolhouse to the consolidated school." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 29 (1971). The Supreme Court has never defined the "scope of permissible transportation of students as an implement of remedial decree" and "by the very nature of the problem it cannot be defined with precision." *Id*.

Due to the variant nature of and problems inherent in planning for student transportation, no rigid guidelines exist by which to gauge unitary status with regard to transportation. *Id*. A court must determine the soundness of any transportation plan in light of these concerns, as well as general desegregation concerns that include (1) the non-exclusion of minorities on account of race, (2) the elimination of one-race buses to the greatest degree possible, and (3) remedial alteration of routes to achieve non-discriminatory busing. *Id* at 22-31.

### 2. Prior Orders

The 1970 *Order* requires that "[t]he transportation system shall be completely re-examined regularly by the superintendent, his staff, and the school board." Doc. 83-2 at p. 14. It further provides that "[b]us routes and the assignment of students to buses will be designed to insure the transportation of all eligible pupils on a non-segregated and otherwise non-discriminatory basis." *Id*.

In addition, the 1973 *Order* required RCSD to "eliminate all overlapping bus routes which result from the District's former policy and practice of operating a dual racial system of bus transportation; and no bus route shall be established or maintained which provides for the by-passing of any student(s) to pick up another student (other students) of a race different from the student(s) by-passed." Doc. 83-3 at p. 4.

### 3. The District has complied with all Orders and eliminated the vestiges of discrimination with respect to transportation

RCSD utilizes a nondiscriminatory transportation plan which provides transportation to all eligible students enrolled in RCSD using routes that are devised based on geographical feasibility and other non-racial concerns, including student safety, mileage, and student time on buses. *See* Doc. 89-3. This transportation plan was introduced in 1995 and is modified as needed to upgrade guidelines. RCSD's current transportation policies and practices are reviewed on an annual basis by the RCSD Board. In addition, RCSD routinely reviews its transportation system and the corresponding routes.

All RCSD busing assignments are made in a nondiscriminatory manner. *See* Doc. 89-4. Black, white, and other students are transported daily on the same buses and integrated within bus routes. *Id*. There are no purposefully one-race buses, and no buses travel overlapping bus routes on which certain students are bypassed. *Id*. The Parties agree that RCSD has complied with its obligations in the area of transportation.

## IV. CONCLUSION

Based upon careful review of the record, conditions at RCSD schools, meeting with community members on multiple occasions, consultations among counsel and RCSD's timely response to inquiries and requests for information, the Parties agree that RCSD has satisfied its desegregation obligations in the areas of transportation and facilities. Furthermore, the Parties agree that this Court should terminate its exercise of its jurisdiction with respect to transportation and facilities within RCSD.

Continued judicial supervision of this case should be limited to ensuring that RCSD:

(1) Refrains from taking any actions that reverse its progress toward desegregation; and

(2) Takes all practicable steps to eliminate the vestiges of the prior *de jure* system in the remaining areas of extracurricular activities, student assignment, faculty assignment, staff assignment, and quality of education.

The Parties commit to negotiate in good faith any disputes that may arise, but the United States and Private Plaintiffs shall retain the right to seek judicial resolution of any noncompliance.

This Court, having found good cause has been shown for the terms and conditions recited herein, hereby orders, adjudges and decrees that the Parties will comply with this Order, and any prior Orders issued in this case that are not inconsistent with the terms herein, all of which shall continue in full force and effect. Specifically, this Court:

(1) Declares that RCSD has achieved unitary status in the areas of transportation and facilities;

(2) Withdraws its supervision of RCSD in and dismisses the claims related to the areas of transportation and facilities; and

(3) Maintains jurisdiction over the areas of extracurricular activities, faculty assignment, staff assignment, student assignment, and quality of education.

**SO ORDERED**, this the 30TH day of October, 2019.

/s/Tom S. Lee_____
**THE HONORABLE TOM S. LEE**
**UNITED STATES DISTRICT COURT JUDGE**

Respectfully submitted by:

/s/ *Lauren E. Ward*
Lauren E. Ward, MS Bar No. 105019
GRIFFITH LAW FIRM
P.O. Box 2248
Oxford, MS 38655
Phone: (662) 238-7727
Fax: (866) 493-4220
lauren@glawms.com
*Attorney for Rankin County School District*